**DAYTON POWER & LIGHT CO., and Entergy Services, Inc., Plaintiffs,**

v.

**Carol BROWNER, EPA Administrator, et al., Defendants.**

No. Civ.A. 97–3074(JLG).

United States District Court, District of Columbia.

March 31, 1999.

Supplemental Memorandum April 8, 1999.

William M. Bumpers, Clara C. Poffenberger, Baker & Bott, Washington, DC, for plaintiffs.

Mary F. Edgar, Kim L. Simmons, Dept. Of Justice, Environmental Defense Section, Washington, DC, Amber Aranda, Laurel Celeste, Attorney Advisor, U.S. Environmental Protection Agency, Washington, DC, for defendants.

## MEMORANDUM

JUNE L. GREEN, District Judge.

This matter is before the Court on cross-motions for summary judgment, pursuant to Federal Rule of Civil Procedure 56(a). The Plaintiffs, The Dayton Power and Light Company and Entergy Services, Inc., seek judicial review, under the Administrative Procedure Act, 5 U.S.C. § 706, of a final rule issued by the United States Environmental Protection Agency ("EPA") under sections 313(b) and 328 of the Emergency Planning and Community Right–to–Know Act of 1986 ("EPCRA"), 42 U.S.C. § 11023(b) & 11048. For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment, and denies the Plaintiffs' Motion for Summary Judgment.

## BACKGROUND

This controversy arises from a rule promulgated by the EPA regarding the reporting requirements for the disposition and management of toxic chemicals included on the Toxic Release Inventory ("TRI") list. Plaintiffs are electricity generating facilities that combust coal or oil that are now subject to the reporting requirements under EPCRA.

Section 313 of EPCRA, 42 U.S.C. § 11023, requires certain facilities that manufacture, process or otherwise use chemicals on the TRI list ("toxic chemicals") to submit annual reports to the EPA and state officials. 42 U.S.C. § 11023(b)(1)(A). These reports must contain information as to whether the facility manufactures, processes, or otherwise uses listed chemicals, an estimate of the maximum amounts of each listed chemical present at the facility at any time, methods of disposal or treatment of waste, and an estimate of the amount of each toxic chemical entering the "environment."[1] 42 U.S.C. § 11023(g). The EPA compiles the data from these reports into a computer database and makes it accessible to the public. 42 U.S.C. § 11023(j).

Initially, the TRI reporting requirement was applicable to facilities with ten or more employees that are in Standard Industrial Classification ("SIC") Codes 20 through 39, which are classifications covering manufacturing industries. 42 U.S.C. § 11023(b)(1)(A). Congress also authorized the EPA to extend the reporting obligation to facilities in other SIC Codes:

> The Administrator may add or delete Standard Industrial Classification Codes for purposes [of TRI coverage], but only to the extent necessary to provide that each Standard Industrial Code to which this section applies is relevant to the purposes of this section.

42 U.S.C. § 11023(b)(1)(B).

Congress required the facilities that fell within the SIC Codes and "manufactured, processed or otherwise used" a toxic chemical to file TRI reports. 42 U.S.C. § 11023(b)(1)(A). To manufacture is "to produce, prepare, import, or compound a toxic chemical." 42 U.S.C. § 11023(b)(1)(C) Processing is "the preparation of a toxic chemical, after its manufacture, for distribution in commerce." *Id.*

On May 1, 1997, after proper notice and comment procedures, the EPA promulgated a final rule adding seven new industry groups to the list of facilities subject to the TRI reporting program. 62 Fed.Reg. at 23,834. One of the newly-included facilities is electricity generating facilities that combust coal and/or oil for purposes of generating power for distribution in commerce. The rule expands EPCRA Section

---

1. "Environment" is defined by Congress as encompassing "water, air, and land and the interrelationship which exists among and between water, air, and land and all living things." 42 U.S.C. § 11049(2).

313 obligations to the operations of many of the Plaintiffs' electric facilities. Plaintiffs complain that the EPA lacks the authority to alter EPCRA to include these electric facilities, and brings this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 706(2)(A), claiming that the modification of EPCRA is agency action that is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.

## DISCUSSION

### Summary Judgment Standard

The Court shall grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In the instant case, the essential facts are not in dispute; therefore, the Court directs its analysis to the interpretation of EPCRA and the applicable law.

### The "Chevron" Standard

■ Pursuant to the APA, the Court's review of the Secretary's decision in a challenged agency action is not de novo, and the Court may set aside an administrative decision only if the decision was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or otherwise not in accordance with law. 5 U.S.C. § 706(2)(A) & (E). Under this standard, the administrative agency rendering the decision is entitled to considerable deference by the Court. See Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971). Before deference to the agency can be considered, the Court must decide the threshold query of whether Congress has spoken directly to the precise question at issue. If "the intent of Congress is clear, [t]hat is the end of the matter." See Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc., 467 U.S. 837, 843,

104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If the Court determines that Congress has not addressed the question at issue, it must then determine if the agency's construction of the relevant statute is permissible. Chevron at 843, 104 S.Ct. 2778. To uphold the agency's interpretation of the challenged rule, the Court need not find that the agency's interpretation is the only permissible construction, or even the reading that the Court would have chosen, but merely that the agency's interpretation is reasonable. Id. at 843 n. 11, 104 S.Ct. 2778.

### "EPCRA"

■ EPA's decision to add electricity generating facilities that combust coal and/or oil for purposes of generating power for distribution in commerce to the list of facilities subject to TRI reporting requirements falls squarely within EPA's statutory authority. In 42 U.S.C. § 11023(b)(1)(B), Congress expressly authorized the EPA to encompass facilities into the TRI program to the extent necessary to further the purposes of the TRI reporting program. The purpose of the TRI program is "to inform persons about releases of toxic chemicals to the environment; to assist governmental agencies, researchers, and other persons in the conduct of research and data gathering; to aid in the development of appropriate regulations, guidelines, and standards." 42 U.S.C. § 11023(h). The Plaintiffs argue that EPCRA directs the EPA to focus exclusively on facilities that engage in activities "operationally similar" to facilities in the manufacturing sector, meaning facilities that produce products similar to those products produced by the manufacturing sector or in a similar fashion to the products produced by the manufacturing sector. The plain language of EPCRA allows no such limitation. The only governing standard for the addition of SIC Codes to the TRI program is the informational purpose and value of reporting the release of toxic chemicals into the environment.

Looking to the plain language of the statute, insofar as Plaintiffs manufacture, process or otherwise use toxic chemicals in significant quantities, and are likely to report information on those activities, adding electricity generating facilities serves the informational purpose of EPCRA. *See Ardestani v. INS,* 502 U.S. 129, 135–36, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991) ("The 'strong presumption' that the plain language of the statute expresses congressional intent is rebutted only in 'rare and exceptional circumstances,' ... when a contrary legislative intent is clearly expressed.").

Looking beyond the plain language of the statute to support their argument, Plaintiffs quote a Conference Report on EPCRA:

Subparagraph 313(b)(1)(B) of the conference substitute provides that the Administrator of the EPA may add or delete SIC Codes specified for coverage in the legislation. This authority is limited, however, to adding SIC Codes for facilities which, like facilities within the manufacturing sector SIC codes 20 through 39, manufacture, process, or use toxic chemicals in a manner such that reporting by these facilities is relevant to the purposes of this section.

H.R.Conf.Rep. ·No. 962, 99th Cong., 2d Sess. 281 292 (1981).

Plaintiffs claim that the operating activities of the electric utility industry are distinctly different from those of the listed manufacturing sectors included in EPCRA. Plaintiffs argue that their facilities do not "manufacture or otherwise use" toxic chemicals for the purposes of EPCRA, as manufacturing facilities do. Plaintiffs state that all of he listed manufacturing facilities purchase or make the TRI chemicals for the chemical properties of those chemicals. The chemicals are either incorporated into the products, used to make the products, or are transformed into other TRI chemicals for resale or further processing. Conversely, Plaintiffs . claim, electricity generating facilities utilize coal and oil for reasons that have nothing to do with the trace concentrations of TRI chemicals that may be found in the fuels. No chemical in the fuel in transformed into, contributes to, or is made part of electricity generating plants' products. Plaintiffs claim that the TRI chemicals are meaningless for the production of electricity.

The Defendants state that the "similarity" referred to in the Conference Report quoted by Plaintiffs does not relate to whether the facility produces the same kind of products or produces products in the same manner as the manufacturing sector, but rather relates to whether facilities manufacture, process, or otherwise use toxic chemicals "in a manner such· that reporting by these facilities is relevant to the purposes of this section." This is how the Court reads this report, and this interpretation accords with the plain language of EPCRA. Moreover, this interpretation is reasonable. *See Chevron* at 843, 104 S.Ct. 2778. To satisfy the purposes of EPCRA, it matters˙ not that electricity generating facilities do not use coal and oil for the TRI chemicals found in these materials. Nor is it relevant that the amount of TRI chemicals in the coal and oil cannot be minimized. It matters only that toxic chemicals are released into the environment by the production of electricity, and that the public should be informed of these emissions. The Court finds that the EPA's interpretation of EPCRA is supported by the clear language and the legislative history of EPCRA, and does not need to apply the second step of the *Chevron* analysis to determine if the interpretation is reasonable.

### The de minimis Exemption

The TRI reporting requirements contain an exemption allowing facilities to disregard certain minimal concentrations of toxic chemicals in mixtures or other tradename products when making EPCRA's TRI reporting determinations. *See* 40 C.F.R. § 372.38(a); 53 Fed.Reg. at 4504 and 4509. If the toxic chemical is present in a mixture or trade name product at

levels below one percent, or 0.1 percent if the chemical is a carcinogen, facilities are generally not required to account for those quantities it has processed or otherwise used in TRI reporting. 40 C.F.R. § 372.38(a). Plaintiffs raise the argument that they are entitled to this exemption for manufactured by-products, because they allegedly have "little information" on the quantities of TRI chemicals in fuels and combustion by-products.

■ The *de minimis* exemption of EPCRA is not a new portion of EPCRA. EPA has applied the exemption since 1988. The exemption is a general provision of EPCRA applicable to all facilities covered under EPCRA. The expansion of EPCRA of which the Plaintiffs complain merely extends the reporting obligations of EPCRA to utility companies. The *de minimis* exemption of EPCRA became relevant to Plaintiffs after this expansion. Plaintiffs mistakenly incorporate this *de minimis* argument into their motion for the Court to set aside the expansion of EPCRA by the EPA. This argument is not ripe for judicial review. For the reasons the Court has outlined, the expansion of EPCRA to include utility companies in the TRI reporting program is neither arbitrary, capricious, nor contrary to applicable law. The Court cannot carve out a specific extension of the exemption to be applicable only to utility companies after ruling that the expansion of EPCRA is reasonable. In addition, Plaintiffs failed to raise this *de minimis* issue during the comment period of the rulemaking. *See Linemaster Switch Corp. v. EPA*, 938 F.2d 1299, 1308 (D.C.Cir.1991) ("claims not presented to an agency may not be raised for the first time before a review court"). Therefore, the *de minimis* issue is not properly before this Court.

## CONCLUSION

For the reasons stated, the Court concludes that EPCRA speaks directly to the issue in this case, namely the standard for addition of SIC Codes to the TRI pro-

gram, therefore satisfying the test outlined in *Chevron*. The Plaintiffs' motion for summary judgment, therefore, is denied and the Defendants' motion for summary judgment is granted. An appropriate order accompanies this Memorandum.

### ORDER

Upon consideration of the cross-motions for summary judgment; the oppositions and replies thereto; the entire record in this case; and for the reasons set forth in the accompanying memorandum of law, it is, this 31st day of March, 1999,

**ORDERED** that Plaintiffs' Motion for Summary Judgment is **DENIED;** it is further

**ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED;** and it is further

### SUPPLEMENTAL MEMORANDUM

This memorandum supplements the memorandum issued in this case on March 31, 1999, in order to address two specific issues. For the reasons set forth below, the Court grants Defendants' Motion for Summary Judgment, and denies the Plaintiffs' Motion for Summary Judgment.

### BACKGROUND

The background in this case was discussed in the March 31, 1999 memorandum, and will not be reiterated here.

### DISCUSSION

The standard of review in this case was discussed in the March 31, 1999 memorandum, and will not be reiterated here.

EPCRA section 313 requires the owners and operators of certain facilities that manufacture, process, or otherwise use a TRI chemical in excess of specified amounts to submit annual reports on environmental releases of those chemicals. EPCRA defines "release" to mean "any spilling, leaking, pumping, pouring, emitting, emptying, discharging, injecting, escaping, leaching, dumping, or disposing into the environment (including the aban-

donment or discarding of barrels, containers, and other closed receptacles)." 42 U.S.C. § 11049(8). "Environment" includes "water, air, and land and the interrelationship which exists among and between water, air, and land and all living things." 42 U.S.C. § 11049(2).

■ Plaintiffs challenge this portion of EPCRA, insofar as EPCRA applies the term "release" to include disposal of toxic chemicals into on-site landfills and surface impoundments. See 62 Fed.Reg. at 23,-853. Plaintiffs argue that in the context of ash and other materials from electric generating operations, where the ash is not hazardous and contains minute concentrations of TRI chemicals, and when the ash is being managed to prevent or minimize accidental release, the EPA's definition of release is arbitrary, capricious, and an abuse of discretion. Plaintiffs assert that the combustion ash produced in generating electricity is responsibly managed in systems that are lined with clay, plastics, or other lining material for the purpose of avoiding or minimizing releases to the environment, and therefore do not come into contact with an environmental medium. Defendants focus on the definition of environment to emphasize that it includes "the interrelationship which exists among and between water, air, and land and all living things." 42 U.S.C. § 11049(2). A plain reading of the statute supports EPA's interpretation of "release" to include toxic chemicals dumped into land disposal facilities. As with the de minimis issue discussed previously, the application of this reporting requirement is not novel. Since 1988, the EPA has interpreted this reporting requirement in accordance with the plain language of the statute to include reporting of the quantity of a toxic chemical that is disposed in or on land. 52 Fed.Reg. 21,154 & 21,162 (Jun. 4, 1987); see 52 Fed.Reg. at 21,198 (Proposed Reporting Instructions); 53 Fed.Reg. 4500 &

4545 (Feb. 16, 1988) (Final Reporting Instructions).

Finally, Plaintiffs complain that the EPA's extension of EPCRA to include electricity-generating facilities requires that electric utilities report releases from non-coal/oil-fired units that are located on contiguous land, and are under common ownership with coal- or oil-fired units. Plaintiffs argue that since EPCRA excludes non-coal/oil-fired units from TRI reporting obligations, the EPA's definition of "facility"[1] allows the agency to arbitrarily require that gas or nuclear generating stations (which do not use coal or oil) would be subject to TRI reporting requirements if the stations are contiguous to coal- or oil-fired facilities and share a common owner.

For the reasons the Court has discussed, the expansion of EPCRA to include utility companies in the TRI reporting program is within the authority of the EPA, and is neither arbitrary, capricious, nor contrary to applicable law. As with the de minimis exemption, the Court is loathe to carve out a specific rule or portion of a rule to be applicable only to utility companies after ruling that the expansion of EPCRA to these companies is reasonable. As the Court of Appeals for the D.C. Circuit has stated, "It is extremely risky for courts to second-guess agency judgments regarding exemptions when Congress has created a general rule and itself carved out certain exemptions, but has not made the exception desired by a litigant." Capitol Technical Servs., Inc. v. FAA, 791 F.2d 964, 969–71 (D.C.Cir.1986). Therefore, the Court rejects Plaintiffs' arguments with respect to the EPA's definitions of "release" and "facility."

## CONCLUSION

The Plaintiffs' motion for summary judgment, therefore, is denied and the Defendants' motion for summary judgment is

---

1. EPCRA defines "facility" as "all buildings, equipment, structures, and other stationary items which are located on a single site or on contiguous or adjacent sites and which are owned or operated by the same person...." 42 U.S.C. § 11049(4).

granted. An appropriate order accompanies this Memorandum.

### *ORDER*

Upon consideration of the cross-motions for summary judgment; the oppositions and replies thereto; the entire record in this case; and for the reasons set forth in the accompanying supplemental memorandum of law, it is, this 8th day of April 1999,

**ORDERED** that Plaintiffs' Motion for Summary Judgment is **DENIED;** it is further

**ORDERED** that Defendants' Motion for Summary Judgment is **GRANTED;** and it is further

**ORDERED** that the Clerk shall mail copies of this Order to: